# STATE OF MICHIGAN

# COURT OF APPEALS

In re BROWN-NEVINS/LEMM, Minors.

UNPUBLISHED
February 2, 2016

No. 327539
Clinton Circuit Court
Family Division
LC No. 14-025228-NA

Before: SHAPIRO, P.J., and O'CONNELL and BORRELLO, JJ.

PER CURIAM.

Respondent appeals by right the circuit court's order terminating her parental rights to the minor children, DB, WL, and DL pursuant to MCL 712A.19b(3)(c) (conditions that led to adjudication continue to exist), MCL 712A.19b(3)(g) (failure to provide proper care and custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if children returned). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

On May 9, 2014, the Department of Health and Human Services (DHHS) filed a petition to remove respondent's three minor children from her care. DHHS alleged that law enforcement conducted a raid at respondent's home because of complaints that she and her roommate were selling contraband out of the home. Respondent tested positive for marijuana and prescription drugs and the home was cluttered and lacked sufficient food and sleeping arrangements for the children. The petition also alleged that respondent suffered from mental health issues that affected her ability to parent.

Thereafter, at a pretrial hearing on May 29, 2014, respondent pleaded no contest to the allegations that her home was raided as a suspected drug house, that she tested positive for marijuana, that DHHS tried to establish a safety plan for the children, and that she did not have car seats to transport the children. She also pleaded no contest to the fact that her home was cluttered and that the twins slept in a shared playpen. The court accepted the admissions and assumed jurisdiction over the children.

From May 2014 through February 2015, DHHS provided services to respondent and respondent-father of two of the children. On February 26, 2015, the court held a dispositional review and permanency hearing. At the hearing, DHHS caseworker Rebecca Wiklanski testified that the oldest child, DB, began improving after the court suspended parenting time. Wiklanski testified that respondent moved in with her father and did not have gainful employment.

-1-

Housing and income were a continuing concern. According to Wiklanski, respondent had been "somewhat resistant" to a vocational program in the past, but she attempted to gain admission to a program. Wiklanski also explained that respondent had received a letter from a family friend offering to let her move into a mobile home. Wiklanski testified that respondent continued counseling, but the counselor informed her that respondent was only able to "process on the emotional level [of] about the age of a 14 year old." Wiklanski testified that respondent became "very angry," yelled, and threatened to end her life during a recent meeting with DHHS personnel, though she later apologized for the outburst. Wiklanski also testified that respondent's drug tests continued to show clean results.

Wiklanski supported changing the goal of the proceedings from reunification to adoption due to lack of progress, explaining that "there are some glimmers of . . . possible jobs and housing, but those are not definites and we're still in the same place we were in . . . when the children were removed." The court authorized DHHS to file a petition for termination of parental rights, noting that it was "a week away from the 10 month mark" and that the reports indicated a lack of consistency, progress, or benefit from services.

The trial court held a two-day termination hearing on April 16, 2015 and April 17, 2015. At the hearing, counselor Candace Mason testified that she counseled respondent and respondent-father from late October 2014 until late January 2015. Mason testified that she initially held joint sessions with the couple, but she switched to individual sessions because they had different communication styles. Mason explained that her goals for the couple were to improve communication, get them working together, establish independence from their families and resolve the barriers that they faced. Mason testified that the couple were living with respondent's father, they both lacked employment, and they both lacked a means of transportation.

Mason testified that respondent took medication for bipolar disorder and respondent suffered from depression. Mason explained that respondent had the emotional maturity level of a teenager and she previously estimated her emotional level was that of a 14 year old child. Mason explained that she assigned respondent homework, but respondent only reported trying to do the homework but never showed her the completed work. Mason testified that she did not believe that she was able to improve respondent and respondent-father's communication issues and Mason explained that it would be beneficial if the two were not in a relationship. Mason testified that respondent faced financial, housing, transportation, medical, and mental health issues and Mason was concerned that respondent was not "making any progress" in resolving the barriers that needed to be resolved.

Parenting Coach Tammy Cordes testified that respondent successfully completed a supportive parenting visitation program. Cordes explained that respondent "sometimes" did not prepare for lessons involved in the course. She believed that respondent benefitted from the program "in some ways," but parenting time visits were "a little chaotic," and there were "a lot of behavior issues with . . . [DB]." Cordes testified that respondent could "not consistently" manage DB's misbehavior and the child's behavior presented unusual parenting challenges. Cordes expressed concern about respondent's ability to handle all three children alone. In assessing respondent's improvement, Cordes testified that she "improved in appropriate family rules and power independence," but declined in setting appropriate expectations.

Wiklanski testified that respondent had "dependent and avoidant personality traits with depressive and self-defeating personality features, generalized anxiety disorder," and "moderate bipolar disorder." Wiklanski testified that respondent still did not have housing or gainful employment and respondent did not benefit from services to the degree required because there were still issues surrounding housing, transportation and employment, and communication with respondent had "broke[n] down." Wiklanski testified that respondent threatened to commit suicide if DHHS took her children away and she explained that respondent was still dealing with emotional stability issues.

Cindy Price, a child and family therapist, testified that DB seemed calmer and happier after visitation with his parents stopped, and DB's caregivers reported a "great improvement." She explained that DB did not display any anger at her office visits, and he now appeared healthy and normal. Price testified that DB never talked about respondent.

Pepper Near, DB's preschool teacher, testified that on days when DB had to leave for parenting time visits, he would break down and cry or run and hide. Near explained that DB was "weepy" and "clingy" after parenting time visits. According to Near, the only time DB mentioned respondent was when he drew a face, cut it into pieces, and explained that he was "'cutting off mean mommy's head.'" Near testified that she was "really surprised at the improvement" in DB's behavior after parenting time visits stopped.

The circuit court found clear and convincing evidence to terminate respondent's parental rights to all three children. The court found that while respondent participated in services, the counselor indicated that the only improvements came in mental and medical health, and respondent still had the same financial and housing issues as well as depression. The court cited the counselor's testimony that respondent functioned emotionally at the level of a teenager and that she did not complete the homework associated with the services. The court found that respondent was unable to manage DB's misbehavior and she could not meet his needs without assistance. The court found that respondent suffered from "anger issues," and that her threat to kill herself upon learning of the petition to terminate rights indicated that she was not in a position to provide parenting despite some progress during therapy. The court also found that termination was in the best interests of the children. This appeal ensued.

## II. ANALYSIS

We review a trial court's termination order for clear error. *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

Respondent argues that DHHS failed to make reasonable efforts to reunify respondent and her children where DHHS provided services to respondent and respondent-father together instead of tailoring services to meet respondent's needs. This argument lacks merit.

"Generally, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009). "Reasonable efforts

-3-

to reunify the child and family must be made in *all* cases except those involving aggravated circumstances . . . ." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (citation omitted) (emphasis in original).

In this case, viewed in the aggregate, DHHS provided services that amounted to a reasonable effort to reunify respondent and the children. While DHHS provided some joint services, other services such as counseling sessions with Mason, were provided separately. While respondent contends that respondent-father was a hurdle to reunification, respondent had other far more significant hurdles to overcome and she fails to articulate how other individualized services would have allowed her to overcome these hurdles. In short, DHHS provided respondent with reasonable services in support of reunification efforts.

In her second and third questions presented, respondent appears to contend that the circuit court did not have authority to authorize the petition to terminate parental rights and in finding that she did not benefit from services. However, the crux of these arguments appears to be that the trial court erred in finding grounds for termination.

In order to terminate a respondent's parental rights, the circuit court must find that at least one of the statutory grounds for termination under MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). These factual findings are reviewed for clear error. *In re BZ*, 264 Mich App 296-297.

In this case, the circuit court, in part, found grounds for termination existed under MCL 712A.19b(3)(c)(*i*), which provides in relevant part that termination is warranted where clear and convincing evidence exists that, "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the [children's] age."

In this case, the children were removed from the home in May 2014. The termination hearing was held in April 2015, almost one year later. At the time of the hearing, the issues that gave rise to the petition continued to exist. Respondent did not have adequate housing, gainful employment, or a means of transportation. In addition to her economic and financial issues, respondent continued to suffer from mental health issues and emotional immaturity that inhibited her ability to adequately care for three young children. A caseworker testified that respondent threatened to commit suicide if petitioner sought to take away her children and the caseworker explained that respondent still suffered from emotional issues. Respondent's counselor testified that respondent had the emotional maturity level of a 14 year old child and respondent did not complete the assignments that Mason assigned to her. Mason explained that respondent faced financial, housing, transportation, medical and mental health issues, although her medical and mental health issues improved over the course of counseling. Notwithstanding some improvement, Mason was concerned that respondent was not making any progress in resolving all the barriers that needed to be resolved. Moreover, Cordes, respondent's parenting coach, testified that respondent could "not consistently" manage the extreme misbehavior of her oldest son and Cordes had concerns about respondent's ability to care for all three children on her own. Finally, Wiklanski testified that respondent failed to adequately benefit from services and communication with respondent had "broke[n] down."

In sum, having reviewed the record, we are not left with a definite and firm conviction that the trial court erred in finding clear and convincing evidence that the conditions that led to the adjudication continued to exist and there was no reasonable likelihood that they would be rectified within a reasonable time period considering the age of the children. MCL 712A.19b(3)(c)(*i*). Because we conclude that there was clear and convincing evidence to support at least one statutory ground for termination, we need not consider the additional grounds upon which the circuit court based its decision. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

To the extent respondent challenges the circuit court's best interest findings, the circuit court did not clearly err in finding that termination was in the children's best interests. *Id*. Here, as discussed above, the record shows that respondent was not providing adequate care for the children at the time they were removed from her home and the conditions that gave rise to the petition had not changed and were not reasonably likely to change. Respondent did not have employment or housing and she faced numerous other obstacles in her personal life that inhibited her ability to adequately care for the children. In short, the circuit court did not clearly err in finding that termination was in the best interests of all three children.

Affirmed.


/s/ Douglas B. Shapiro
/s/ Peter D. O'Connell
/s/ Stephen L. Borrello

-5-